## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| Le-Mayne De-Niro Gayle Sawyers, | ) | Civil Action No.:_____ |
| | ) | |
| Petitioner, | ) | |
| | ) | **Verified Expedited Petition** |
| vs. | ) | |
| | ) | (Hague Convention Action) |
| Fitzroy Alexander Wellington and | ) | |
| Deneese Wellington, | ) | |
| | ) | |
| Respondents. | ) | |

Petitioner Le-Mayne De-Niro Gayle-Sawyers (hereinafter "Mother"), by and through the undersigned counsel and pursuant to the International Child Abduction Remedies Act (hereinafter "ICARA," 22 U.S.C. § 9001 et seq.) files this Verified Petition seeking the return of her son, J.J.W. (the "Child"), to Jamaica, after the Child was wrongfully abducted and retained in the Northern District of Georgia (specifically upon information and belief, in Lawrenceville, Georgia), United States of America, by the Respondents, Fitzroy Alexander Wellington (hereinafter "Father"), and Deneese Wellington ("Father's wife") (collectively "Respondents"). The Respondents wrongfully abducted and retained the Child in the United States in violation of international law and of the Mother's rights of custody under Jamaican law. The Mother respectfully seeks judicial resolution of this Petition within six

weeks, as provided for by the Hague Convention. In support of her Petition, the Mother respectfully shows this Honorable Court as follows:

## Introduction

1.     Mother, Le-Mayne D. Gayle-Sawyers, a citizen of Mandeville Manchester, Jamaica, brings this action to secure the return of her eight-year-old son, J.J.W., who has been, without Mother's consent or acquiescence, wrongfully abducted and retained in the Northern District of Georgia by Child's father, Fitzroy A. Wellington, a citizen of Jamaica ("Father"), and Father's wife Deneese Wellington (Father and Father's wife are referred to collectively as "Respondents").

2.     Mother files this Verified Petition pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the "Convention") and the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §§ 9001–11. On April 1, 2019, the 1980 Hague Convention on the Civil Aspects of International Child Abduction entered into force between the United States and Jamaica.

3.     The Convention is a treaty between multiple signatory countries ("Contracting States") wherein the countries agree to cooperate for the specific purpose of returning children to their home country for custody proceedings. The Convention applies to cases where children under the age of sixteen years, like J.J.W., have been removed from the child's habitual residence in breach of rights of

custody of a petitioner, which the petitioner had been exercising at the time of the wrongful removal or wrongful retention of the child, and retained in any Contracting State. *See* Convention, art. 1.

4.     The Convention authorizes a federal district court to determine the jurisdictional issue of the wrongful removal or retention of a child. But it does not permit the court to consider the merits of any underlying custody dispute; that determination is one for the courts of the child's habitual state of residence. *Ruiz v. Tenorio*, 392 F.3d 1247, 1250 (11th Cir. 2004) ("The court's inquiry [under the Convention] is limited to the merits of the abduction claim and not the merits of the underlying custody battle."). The Convention "is intended as a rapid remedy for the left-behind parent to return to the status quo before the wrongful removal or retention." *Id.*; *see Ovalle v. Perez*, 681 F. App'x 777, 786 (11th Cir. 2017) (citations omitted).

5.     Once a party has established that removal or retention was wrongful, Article 13 of the Convention requires the mandatory return of the child to the home state unless a limited exception applies.

6.     The Hague Convention authorizes this Court to determine the merits of the Petitioner's claim from wrongful retention of J.J.W., it does not permit the Court to consider the merits of any underlying custody dispute, if any. Thus, this Petition

is to enforce an international treaty and the related law concerning jurisdiction. This is not a child custody case, and the best interest standard does not apply to this Court's determination of the proper jurisdiction.

## Jurisdiction and Venue

7.     This Court has jurisdiction over this case under 22 U.S.C. § 9003(a) ("The courts of the United States and the United States district courts shall have concurrent original jurisdiction of actions arising under the Convention.") and 28 U.S.C. § 1331 (federal question jurisdiction).

8.     Venue is proper under 22 U.S.C. § 9003 and 28 U.S.C. § 1391(b) because the Child and Respondents are, upon information and belief, currently residing at 342 Leggett Oaks Lane, Lawrenceville, Georgia 30043, which is located within the Atlanta Division of this Court.

9.     A decision under the Convention is not a determination of the custody of the minor child, pursuant to Article 19 of the Convention and 22 U.S.C. § 9001(b)(4), as this Court does not have jurisdiction to hear any underlying custody dispute, if any. Article 16 of the Convention specifically bars this Court from even considering the merits of custody in favor of either parent once it has received notice of the wrongful removal or retention. *Lops v. Lops*, 140 F. 3d 927, 926 (11th Cit. 1998).

## Statement of Facts

10.     The allegations in this Petition are drawn from a number of sources, including information contained in the Mother's Application for Assistance under the Convention (the "Application"), incorporated herein by reference. A true and correct copy of the Application submitted by Mother to the Jamaica Civil Authority is attached hereto as **Exhibit 1**.

**A.     Familial Relationship and Habitual Residency in Jamaica.**

11.     The Mother is a citizen of Jamaica and has lived there her entire life.

12.     Mother and Father were married on or around February 6, 2010 in the parish of Manchester, Island of Jamaica.

13.     Mother and Father are the Child's parents.

14.     On October 21, 2013, Mother gave birth to J.J.W. in the island of Jamaica.

15.     A true and correct copy of the Child's Jamaican birth certificate listing the Mother as the Child's Mother is attached hereto as **Exhibit 1-b**.

16.     Mother and Father have been separated since on or around May 7, 2014.

17.     The Mother is a citizen and resident of Jamaica, and resided there at the time of the Child's wrongful retention in America. The Mother is the legal and natural parent of J.J.W.

18.    With the exception of the first seven months of his life where Father also lived with Mother, J.J.W. has resided exclusively with the Mother in Jamaica his entire life prior to the Child's wrongful retention and abduction by Father in June of 2021.

19.    On or around December 14, 2016, Father filed a Decree Nisi for Dissolution of Marriage in the Supreme Court of Judicature of Jamaica. A true and correct copy of that Decree is attached hereto as **Exhibit 2**.

20.    Mother was never served, personally or otherwise, with Father's Decree Nisi for Dissolution of Marriage, or any documents and papers related thereto, and therefore never appeared before the court in any manner on the matter.

21.    By correspondence dated July 6, 2017, counsel of record for the Father's divorce from the Mother wrote in a letter to the Registrar of the Supreme Court in Kingston, Jamaica that the Father's divorce from Mother be expedited, and that he be divorced by August 18, 2017. A true and correct copy of this July 6, 2017 correspondence is attached hereto as **Exhibit 3.**

22.    In a Further Supplemental Affidavit of Father in Support of Application to Dispense with Hearing filed in the Supreme Court of Judicature of Jamaica on July 20, 2017, the Father set out the particulars of arrangements for the care, maintenance and upbringing of the Child, to include that at the time of the affidavit,

the Child currently resided with the Mother, and would continue to reside with the Mother in the parish of Manchester.

23.     The Father's July 20, 2017 affidavit also proposed that the Mother would have custody and care/control of child.

24.     In a Decree Nisi for Dissolution of Marriage dated July 24, 2017, the Court certified that the arrangements for the maintenance, care and upbringing of the Child with the Mother are the best that can be devised under the circumstances. The Decree is attached hereto as **Exhibit 4**.

25.     In an Affidavit of Father in Support of Application for Decree filed July 31, 2017, the Father set out the particulars of arrangements for the care, maintenance and upbringing of the Child to again include that at the time of the affidavit, the Child currently resided with the Mother, and would continue to reside with the Mother in the parish of Manchester in Jamaica.

26.     The Father's affidavit also proposed that the Mother would have custody and care/control of child.  The Affidavit is attached hereto as **Exhibit 5.**

27.     Prior to the Respondents' wrongful retention of the Child in the United States, the Child always lived in Jamaica with the Mother and had a strong bond with the Mother.

28.     As such, at all relevant times, the Child was a habitual resident of Jamaica, including at all times immediately preceding Father's and Respondents' wrongful abduction and retention of the Child.

29.     At all times prior to Respondents' wrongful abduction and retention of the Child, the Mother was the natural and legal caregiver to the Child. The Father resided in Jamaica with the Child and Mother for only the first seven (7) months of the Child's life. At all other times of the Child's life, J.J.W. resided in Jamaica with Mother up until Father and Father's wife wrongfully abducted and retained the Child in the United States in June of 2021.

**B.  Father's Scheme to Abduct J.J.W.**

30.     In or around May of 2021, Mother and Father began discussing the Child having a limited summer visit with Father and Father's wife at Respondents' home in Georgia in the United States.

31.     On or around June 5, 2021, at Father's request, Mother signed an authorization or letter, prepared by Father, giving permission for J.J.W. to travel with Father's friend, Mrs. Angella Samuels, from Kingston, Jamaica to Atlanta Georgia. The letter is attached hereto as **Exhibit 6.**

32.     The permission letter did not specify J.J.W.'s return date to Jamaica, but Father and Mother verbally agreed that the Child would be returned to Mother's

custody in Jamaica no later than the end of August 2021, to ensure that the Child was back home in Jamaica prior to the start of the upcoming school year for the Child.

33.    The Mother has never – at any time - acquiesced or consented to the retention of J.J.W. outside of Jamaica for any length or period of time after August 2021.

34.    In fact, in a WhatsApp message from Father to Mother on or around May 31, 2021, Father told Mother that he was thinking about booking the Child's flight to visit him earlier than he originally intended so that the Child could have more time with Father and return to Jamaica in time to rest for school. The message is attached as **Exhibit 7.**

35.    On or around June 11, 2021, J.J.W.'s grandmother and Mother's mother, Sharon Gayle, took the Child to the airport in Jamaica so that he could fly to Georgia with Mrs. Samuels.

36.    Mother asked Father several times to provide her with Mrs. Samuels' contact information so that she could check on J.J.W. while he was with Mrs. Samuels, and Father refused and never provided Mother with Mrs. Samuels' contact information.

37.    Prior to Father requesting that Mother allow J.J.W. to travel with Mrs. Samuels to Georgia, Mother did not know and had never met Mrs. Samuel.

38.    When Mother agreed to allow J.J.W. to visit Father in the United States during the summer months, Mother had no knowledge of or reason to know of Father's scheme to abduct and retain the Child in the United States and not return to J.J.W. to her legal custody in Jamaica.

39.    However, Mother became concerned, upset and frustrated with Father's conduct after he refused to provide her with any contact information for Mrs. Samuels.

40.    Almost immediately after J.J.W. connected with Mrs. Samuels for the purpose of flying to visit Father in the United States, Father began to limit, prevent, restrict, intercept and/or frustrate communications with the Mother regarding the Child's travel status and plans, and communications between the Child and the Mother generally.

41.    On or around June 11, 2021, after the Child had connected with Ms. Samuels at the airport to fly to the United States, Mother reminded Father that Father still had not sent her J.J.W.'s itinerary, including what airline the Child would be traveling on. The messages are attached hereto as **Exhibit 8.**

42.     On around the same date, June 11, 2021, the Mother repeatedly asked Father to have Mrs. Samuels call her so that she could check on J.J.W. After not hearing from Mrs. Samuels, the Mother told the Father that she was getting upset because Mrs. Samuels had not called her.

43.     On June 11, 2021, having not heard from Mrs. Samuels, Mother asked Father to send her Mrs. Samuels phone number or contact information so that she could call her. Rather than give Mother contact information for Mrs. Samuels, Father told Mother that J.J.W. and Mrs. Samuels had already boarded the plane and that the Child was "ok". Father never provided Mother with any contact information for Mrs. Samuels.

44.     On June 11, 2021, Mother responded to Father, "That's for u to say. Am not and won't be at ease until I talk to my child."  "He is travelling with a complete stranger to me, I just wanted to hear his voice. Gosh".

45.     In July of 2021, it became even more apparent to Mother that Father was trying to take full control of J.J.W. and push her out of the Child's life, as Father intercepted her communications with J.J.W. more frequently.

46.     In a WhatsApp message to Mother on or around August 2, 2021, Father wrote to Mother, "Good morning! I trust all is well. I saw your text re J██ getting back in time for school and he mention this morning that you as about his travel date.

Considering he missed out on two terms this school year will be a serious one. We will provide him with the support from here on to ensure he achieve his dreams." Father's WhatsApp message to Mother attached as **Exhibit 9.**

47.    On August 2, 2021, Mother responded to Father, "Good morning. I don't understand this text?", "It will not go like this! Plz send my child back to me", "That's now how you deal with business!!!!". Mother's message to Father is attached as **Exhibit 10.**

48.    When Mother agreed to allow the Child to visit Father and Father's wife in the United States, Mother expected Father to ensure that J.J.W. was returned to her custody in Jamaica by the end of August, which Mother understood to be no later than August 30, 2021, so that the Child could start the school year in Jamaica.

49.    Instead, Father decided that he would unilaterally change the Child's residence to live with him, notwithstanding that he lacked the legal capacity and authority for such decision making.

50.    Following Father's clear expression of his intent to engage in child abduction, he has engaged in and continues to engage in a course of conduct of preventing Mother from communicating with any regularity or consistency with J.J.W.

51.     Further, Father has wrongfully retained the Child in the United States knowing that Mother does not have a visa to travel to the United States and could not pursue one to pursue J.J.W.'s return to her in Jamaica.

52.     Despite Mother's repeated requests to Father to return J.J.W. to her custody in Jamaica, Father has repeatedly refused to voluntarily return the child and has taken no steps to return the Child to Jamaica as he originally told Mother that he would do when Mother agreed to allow J.J.W. to fly to the United States in June of 2021 to visit with Father.

53.     Though Mother was extremely saddened and frustrated with Father's failure to communicate with her regarding J.J.W.'s travel status and visit in the United States, unbeknownst to Mother, Father never intended to return the Child from the moment that J.J.W. got on the plane with Mrs. Samuels and left Jamaica to visit Father and Father's wife on or around June 11, 2021.

54.     Mother, seeing that Father would not return J.J.W. to Jamaica, located Mrs. Angela Samuels' profile on Facebook, and reached out to Mrs. Samuels for help bringing the Child home. Mrs. Samuels did not respond to Mother's plea for help.

55.     Mother has also reached out to Father's church pastor for help bringing the Child home, and Father's pastor also did not respond to Mother's pleas for help.

56.    Respondents have wrongfully retained J.J.W. in the United States, in the Northern District of Georgia, in violation of the Mother's rights of custody under Jamaican law since on or around June 11, 2021, and including since August 2, 2021. Mother seeks the Child's return to Jamaica immediately.

**C.    Mother's Hague Convention Application and Petition.**

57.    Mother filed the Application on or around September 30, 2021. *See* **Exhibits 1, 2**. Since the Father's wrongful abduction and retention of the Child and filing the Application, Mother has actively worked to obtain the Child's return, including by constantly reaching out to Father requesting return of J.J.W.

58.    Mother's Application was transmitted to the United States Department of State.

59.    Mother then obtained the undersigned *pro bono* counsel to secure the Child's return to Jamaica.

60.    Upon information and belief, the Child is currently located with Respondents at 342 Leggett Oaks Lane, Lawrenceville, Georgia 30043.

**Count I**
**Wrongful Retention of the Child**
(Violation of the Convention and 22 U.S.C. § 9001–9011)

61.    Mother incorporates the preceding paragraphs not inconsistent with this claim by reference as if those paragraphs were repeated verbatim herein.

62.     On or about June 11, 2021, and including August 2, 2021, Father and/or Father's wife wrongfully retained the Child in the Northern District of Georgia within the meaning of Article 3 of the Convention.

63.     Father and/or Father's wife continue to wrongfully retain the Child in the Northern District of Georgia in violation of the Convention.

64.     Mother has never consented to or acquiesced in the abduction and retention of the Child in the United States.

65.     Father's and/or Father's wife's retention and abduction of the Child is wrongful within the meaning of Article 3 of the Convention because:

     (a)     Under the Children (Guardian and Custody) Act, the Father's abduction and retention of the Child is in violation of Mother's right as the natural and custodial parent to determine the Child's place of residence;[1]

     (b)     When Father wrongfully abducted and retained the Child in the United States, Mother was actually exercising her rights of custody within the meaning of Articles 3 and 5 of the Convention. Mother would have continued to exercise those rights but for Father's wrongful abduction and retention of the Child; and

     (c)     The Child was a habitual resident of Jamaica within the meaning of Article 3 of the Convention immediately before the abduction and wrongful retention by the Father.

---

[1] *See Abbott v. Abbott*, 560 U.S. 1, 12 (2010) (finding even a simple right to veto whether a child leaves the country to be a sufficient custody right under the Hague Convention).

66.     The Convention applies to children under sixteen (16) years of age. Thus, it applies to the Child J.J.W., who is currently eight years old.

67.     This action was instituted within one year of Father's abduction and wrongful retention of the Child to the United States.

## Count II
**Provisional Measures**
(Convention, art. 7; 22 U.S.C. § 9004)

68.     Father incorporates the preceding paragraphs not inconsistent with this claim by reference as if those paragraphs were repeated verbatim herein.

69.     Pursuant to Article 7(b), this Court may take provisional measures "to prevent further harm to the child or prejudice to interested parties . . . ."

70.     Pursuant to 22 U.S.C. § 9004, this Court "may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the further removal or concealment before the final disposition of the petition."

71.     As set forth in his *Ex Parte* Expedited Motion for a Temporary Restraining Order filed concurrently with this Verified Expedited Petition, Mother requests that the Court take the following provisional measures:

    a)     Issue an order prohibiting Father and Father's wife, or any others acting on Respondents' behalf or at their direction, from removing the Child from the jurisdiction during this action;

b)    Issue an order taking into safe keeping all of the Child's travel documents, including his Jamaican passport;

c)    Issue an expedited *ex parte* temporary restraining order requiring the appearance of Respondents and the Child within fourteen (14) days to determine whether this temporary restraining order will be converted to a preliminary injunction under Fed. R. Civ. P. 65 and to show cause at this hearing why they should not be prohibited from removing the Child from the jurisdiction until this litigation is concluded; and

d)    Order that Father and Father's wife shall respond to the Verified Petition in writing within ten days of any hearing on the extension of the *ex parte* temporary restraining order so that this matter may be expedited as required by the Convention.

72.    Because of safety concerns and the likelihood that Father and Father's wife will ignore and attempt to thwart judicial process and further sequester the Child, Mother requests that the Court direct the United States Marshal to serve the Summons, Verified Petition, any Rule to Show Cause, and any Temporary Restraining Order on Respondents, together with any other documents on file in the action.

73.    This Court must return J.J.W. to Jamaica because, under the Convention and ICARA, a preponderance of the evidence establishes that: (1) the Child is under the age of 16; (2) Jamaica was the Child's habitual residence at the time the Father and Father's wife abducted J.J.W. by wrongfully abducting and retaining him in the United States in June 2021, and including August 2021; (3) the

removal or retention of the Child in the United States is in breach of the Mother's rights of custody under Jamaican law; and (4) the Mother was exercising her rights of custody at the time the Father and Father's wife wrongfully removed or retained J.J.W. in the United States. Under international and domestic law, Georgia is not the Child's country of habitual residence and is obligated to return the child to Jamaica.

**Count III**
**Attorney Fees and Costs**
(22 U.S.C. § 9007)

74.     Mother incorporates the preceding paragraphs not inconsistent with this claim by reference as if those paragraphs were repeated verbatim herein.

75.     Mother has incurred expenses as a result of Father's and Fathers wife's wrongful retention of the Child. Mother will submit a copy of all expenditures as soon as practical and will amend these costs according to proof and in light of further expenditures required because of this wrongful retention.

76.     Mother respectfully requests that this Court award all legal costs and fees incurred as required by 22 U.S.C. § 9007, reserving jurisdiction over further expenses.

## Notice of Intent: Foreign Law

77.     Pursuant to Rule 44.1 of the Federal Rules of Civil Procedure, Mother gives notice to the Court and Respondents of her intent to raise an issue regarding Italian child custody law.

78.     Specifically, Mother intends to introduce, *inter alia*:

(a)  The Children (Guardian and Custody) Act; and

(b)  Other miscellaneous provisions of Jamaican law, or provisions of the Jamaican Constitution that relate to the issues, claims, and defenses relevant to the matters set forth herein.

## Prayer for Relief

**WHEREFORE**, Mother, Le-Mayne De-Niro Gayle-Sawyers, prays for the following relief:

(a)  That after hearing on the merits, this Court issue an order at the conclusion of this case directing the prompt return of the Child to his habitual residence of Jamaica;

(b)  That this Court issue an order prohibiting Father, Father's wife, or any others acting on Respondents' behalf or at their direction from removing the Child from the jurisdiction during this action;

(c)   That this Court issue an order taking into safe keeping all of the Child's, Father's and Father's wife's travel documents, including their passports, and travel visa from any country;

(d)   If the Child's passport is expired, that this Court issue an order requiring Father to appear with the Child as necessary for a passport to be issued to facilitate the Child's return to Jamaica.

(e)   That this Court award Mother's attorneys' fees and costs; and

(f)   That this Court grant any such further relief as justice and Mother's cause may require.

Respectfully submitted this 9th day of June, 2022.

/s/ Marquetta J. Bryan
Marquetta J. Bryan
Georgia Bar No. 074315
marquetta.bryan@nelsonmullins.com
Steven H. Campbell
Georgia Bar No. 161457
steven.campbell@nelsonmullins.com

Nelson Mullins Riley & Scarborough, LLP
201 17th Street, Suite 1700
Atlanta, Georgia 30363
(404) 322-6000 Telephone
(404) 322-6050 Facsimile

**Attorneys for Petitioner Le-Mayne De-Niro Gayle-Sawyers**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| Le-Mayne De-Niro Gayle Sawyers, | )  Civil Action No.:_____ |
| | ) |
| Petitioner, | ) |
| | ) |
| | )  **Verified Expedited Petition** |
| vs. | ) |
| | )  (Hague Convention Action) |
| Fitzroy Alexander Wellington and | ) |
| Deneese Wellington, | ) |
| | ) |
| Respondents. | ) |

I, Le-Mayne De-Niro Gayle-Sawyers, do declare under penalty of perjury under the laws of the United States of America that the foregoing factual allegations in the Verified Expedited Petition are true and correct.

_____
Le-Mayne De-Niro Gayle Sawyers

Manchester, Jamaica

June 9, 2022

Signed in my Presence

Vasiana M. Miller-Hewitt, J.P.
Manchester # J00500
Date: