**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Le-Mayne De-Niro Gayle Sawyers,<br><br>Petitioner,<br><br>v.<br><br>Fitzroy Alexander Wellington and Deneese Wellington,<br><br>Respondents. | NO. 7:22-cv-07153-KMK<br><br>~~[PROPOSED]~~ **ORDER GRANTING PETITIONER'S *EX PARTE* T.R.O. MOTION** KMK<br><br>(Hague Convention Action) |

Before the Court is the *Ex Parte* Expedited Motion for a Temporary Restraining Order (ECF No. 3) filed by Petitioner Le-Mayne De-Niro Sawyers ("Mother") under Article 7(b) of the Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention") and the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §§ 9001–9011. Having considered the record, the Court **GRANTS** Mother's Motion, as further explained below. The Court schedules the preliminary injunction hearing for November 22, 2022 at 2pm, at the United States Courthouse, 300 Quarropas St. White Plains, NY, Courtroom 521

**Analysis**

The Hague Convention is intended "secure the prompt return of children wrongfully removed to or retained in any Contracting State" and to "ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." *Ruiz v. Tenorio*, 392 F.3d 1247, 1250 (11th Cir. 2004). Essentially, the Convention seeks to preserve the *status quo*—the return of children to their home countries for further proceedings. *Id.* (citing *Shealy v. Shealy*, 295 F.3d 1117, 1121 (10th Cir.2002)). "As relevant here, the Convention provides that a child who was 'wrongfully removed' from his place of habitual residence in violation of a person's custody rights must be returned to that place unless certain 'narrow

Case 7:22-cv-07153-KMK Document 33 Filed 11/10/22 Page 2 of 6

exceptions' apply." *Padilla v. Troxell*, 850 F.3d 168, 175 (4th Cir. 2017). Thus, it is *not* the underlying custody case at issue under the Convention, but whether the treaty requires a child to be returned home for custody proceedings. *Ruiz*, 392 F.3d at 1250 ("The court's inquiry is limited to the merits of the abduction claim and not the merits of the underlying custody battle."); *see Ovalle v. Perez*, 681 F. App'x 777, 785–86 (11th Cir. 2017).

To accomplish the goal of maintaining the *status quo*, the Court is empowered to take steps "to prevent future harm to the child or prejudice to interested parties by taking or causing to be taken provisional measures." Convention, art. 7(b); *see also* 22 U.S.C. § 9004(a) (allowing provisional measures "to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition."). An *ex parte* Temporary Restraining Order is one such appropriate measure. *See, e.g.*, *Mendoza v. Pascual*, No. CV 615-40, 2015 WL 2152837 (S.D. Ga. May 7, 2015); *see also*, *e.g.*, *Vite-Cruz v. Sanchez*, No. 3:18-cv-01943-DCC, 2018 WL 6680514, at *14 (D.S.C. Dec. 19, 2018); *Alcala v. Hernandez*, No. 4:14-CV-4176-RBH, 2014 WL 5506739, at *9 (D.S.C. Oct. 30, 2014).

## I. The *Ex Parte* Nature of Mother's Request

Mother's request for relief was heard on an *ex parte* basis. Based on Mother's allegations and the findings below, relief without notice to Respondents Fitzroy Alexander Wellington ("Father") and Deneese Wellington Father ("Father's Wife") is necessary to avoid immediate and irreparable injury, loss, and/or damage if notice of the proceedings was given prior to this Order. As required by Rule 65(b)(1)(A), Mother's counsel has properly certified to the Court the reasons why notice should not be required. Thus, the elements of Rule 65(b)(1) are met.

## II. The Temporary Restraining Order

In determining whether to grant injunctive relief, the district court must separately consider four factors:

(1) Whether there is a substantial likelihood that the claim will succeed on the merits;

(2) whether irreparable harm will be suffered without the restraining order;

(3) whether the potential injury to the movant outweighs possible harm to the opposing party; and

(4) whether the order would not be adverse to the public interest.

*Transcon. Gas Pipe Line Co., LLC v. 6.04 Acres, More or Less*, No. 16-17503, 2018 WL 6367239, at \*19 (11th Cir. Dec. 6, 2018).

An analysis of these factors establishes that provisional measures (in the form of an *ex parte* temporary restraining order) are authorized and necessary here without the need for posting a bond. First, the Court finds that allowing the Father and Father's Wife Respondents to flee with the Child would be, by definition, irreparable harm. *Alcala*, 2014 WL 5506739, at \*6 ("The court observes that allowing the Father to flee with the Child is contrary to the very purpose of the Hague Convention and ICARA, and would result in irreparable harm.").

Second, the Court finds that any threatened harm to Father and Father's Wife is minimal as compared to the probability of irreparable harm to Mother or the Child. As explained in Mother's memorandum in support of the motion presently before the Court, Mother is not seeking a permanent custody order from this Court. Because the Court cannot make a custody determination, the Court finds that Father and Father's Wife cannot lose any custody rights from the Temporary Restraining Order. *See Abbot v. Abbot*, 560 U.S. 1, 20 (2010) ("Ordering a return remedy does not alter the existing allocation of custody rights, but does allow the courts of the home country to decide what is in the child's best interests. It is the Convention's premise that courts in contracting states will make this determination in a responsible manner." (citations omitted)).

3

Third, the Court finds that Mother—at this stage in the proceedings and based on the record before the Court—has clearly demonstrated that she is likely to succeed on the merits. Mother's evidence establishes that (1) the Child's habitual residence is Jamaica and was Jamaica immediately prior to the wrongful retention; (2) Mother has "rights of custody" under Jamaican law; and (3) Mother was exercising his rights of custody and would have continued doing so but for Mother's wrongful retention of the Child in the United States.

Fourth, public policy supports issuance of the TRO here. *See Mendoza*, 2015 WL 2152837, at *7 (concluding that the public interest favored granting the petitioner's request for preliminary injunctive relief, which was similar to the injunctive relief Mother seeks here); *see also Salguero v. Argueta*, No. 5:17-CV-125-FL, 2017 WL 1067758, at *2 (E.D.N.C. Mar. 21, 2017) ("Finally, a TRO serves the public interest. Since international abduction [and] wrongful retention of [a] child[] is harmful to [his or her] well-being,' a TRO in this case will serve the public interest by protecting the child's well-being." (alterations in original)); *Alcala*, 2014 WL 5506739, at *9 (citing ICARA's Congressional findings and concluding that "the public policy is not hindered, but is instead furthered, by the ordering of these provisional measures").

**III.     Rule 65(c) bond requirement.**

In exercising its discretion, the Court concludes that a bond is not required for the Temporary Restraining Order to be issued. "The amount of an injunction bond is within the sound discretion of the district court." *Transcon. Gas Pipe Line Co.*, 2018 WL 6367239, at *26 (quoting *Carillon Imps., Ltd. v. Frank Pesce Int'l Grp. Ltd.*, 112 F.3d 1125, 1127 (11th Cir. 1997)). Mother is merely seeking a *temporary* order prohibiting Respondents from removing the Children from the jurisdiction, requiring Mother to relinquish the Children's travel documents to the custody of the Court, and requiring an expedited hearing. Mother is not seeking a permanent custody order,

nor is she seeking to permanently limit Mother's ability to travel. Therefore, the Court declines to require Mother to post a bond.

## IV.    Expediting the Proceedings

~~Finally,~~ the Court finds that expedited proceedings are necessary and proper here. *See* Convention, arts. 2 and 11; 22 U.S.C. § 9001(a)(4). Therefore, the Court orders that Father and Father's Wife shall respond in writing to the Verified Petition by _11/19/22_____, ten days from the date of the hearing set forth above. *See* Fed. R. Civ. P. 16. *Service of the Amended Petition, the TRO papers and this order must be made by 5pm on 11/14/22*

### Order

For the reasons set forth above, it is **ORDERED** that Mother's *Ex Parte* Expedited Motion for Temporary Restraining Order (ECF No. 3) is **GRANTED**, as follows:

(a)    Respondents Fitzroy Alexander Wellington and Deneese Wellington—or any others acting on their behalf—are **PROHIBITED** from removing the Child, J.J.W, from New York pending the preliminary injunction hearing scheduled below;

(b)    A preliminary injunction hearing to determine whether this Temporary Restraining Order will be converted to a preliminary injunction under Rule 65 is scheduled for _November 22_____, 2022, in Courtroom Number _521_ of the United States Courthouse, _300 Quarropas St,_____ before the Honorable _Kenneth M. Karas_. White Plains, NY

(c)    Fitzroy Alexander Wellington and Deneese Wellington are **ORDERED** to appear **with the Child, J.J.W.,** at this hearing to show cause why they should not be prohibited from removing the Children from the jurisdiction until this litigation is concluded.

(d)    The United States Marshal shall serve Fitzroy Alexander Wellington and Deneese Wellington with process by personally delivering a copy of the Summons, Amended Verified Expedited Petition, this Temporary Restraining Order, and all other documents on file with this Court to them.

(e)          Father and Father's Wife shall respond in writing to the Verified Petition by

12/3/22 _____, ten days from the date of the hearing set forth above.

_____
The Honorable Kenneth M. Karas
United States District Court Judge

12:55 ____ p.m., November 10 , 2022.
White Plains ___, New York